Judge Owsley,
delivered the opinion of the Court.
These are cross writs of error,.brought to reverse a decree pronounced in a contest between adverse interfering claims to land»
The heirs of Trabue were complainants in the court below, asserting the superior equity to the land in contest, under an entry made in the name of .Tames Trabue, which depends upon Samuel M‘Millan’s settlement, and pre-emption, which depends upon, Reuben Searcy.
' These claims are as follows:
27th December, 1799, Reuben Searcy, this day claimed a settlement, and pre-emption, &c. lying on Stoner’s fork of Licking, at Martin’s cabin, by settling in the year, 1777, and residing ever.since. Satisfactory proof being made to the court,, they are of opinion, that the said Searcy has a right to a settlement of four hundred acres, including the above location, and the pre-emption of one thousand acres adjoining, &c.
18th January, 1780,Reuben Searcy enters fourhun-dred acres, in Kentucky, by certificate, &c. lying on Stoner’s fork of Licking, at Martin’s cabin.
“Stoner’s fork nnd^Martin’s eabin,’ in entry, if known ■by generality of those most conversant in that section of country by those names, sufficient notoriety.
*334 4th January, 1-780, Samuel M‘MilIan this day c-laim-e<^ a settlement and pre-emption, to a tract of land,. the-district of Kentucky,.lying on the south fork of Licking-, creek, below. Stoner’s settlement, adjoining Reuben-Searcy’s land above, and running up to the mouth of Cooper’s ran,.for quantity, to include his improvement, by raising-a crop of corn, in the year. 1776. Satisfactory proof being made to the court, they are of opinion, that the said M'Millan has a right to a settlement of four hundred acres, to include ■ saidimprovement, and.thepre-emptionof one thousand •acres adjoining.
18th January, 1780,- Samuel M^illan-enters four-hundred acres in Kentucky, by virtue of a certificate, &c. lying on the south fork of Licking creek,.below Stoner’s seitlement, adjoining Reuben Searcy’s land above, and running up to the mouth of Cooper’s run,., for quantity, including his improvement.
29th- April, 1780, Samuel M‘Millan enters one thousand acres, upon a pre-emption warrant, on Hink-ston’s fork of Licking, adjoining tne settlement on the east, including a cabin on a small, branch',.running south, for quantity.
May, 25th, 1780, James Trabue enters six hundred acres of land, upon a-treasury warrant, on the north-side of the south fork of Licking, beginning at Samuel. M‘Millan’s north line, extending along the same, and north, for quantity.
The court below sustained, the entry of Trabue, and decreed the defendants in that court, to survey so much of the land held by them, as was found to be common to the survey of Trabue, as actually made, and a survey executed, as that court thought the entry ought to be surveyed.
That the court was correct in sustaining the entry of Trabue, we apprehend is abundantly evident, from the testimony and exhibits, contained in the cause.
The main point upon which the validity of that entry depends, is the claim of Reuben Searcy, which ca‘^s to- lie on Stoner’s fork of Licking, at Martin’s cabin, and it is impossible for a dispassionate mind to explore the evidence, and not unhesitatingly pro *335 ■nounce the claim of Searcy a valid one. Martin’s .cabin is not only represented on the connected plat to have stood near the bank of Stoner’s fork of Licking, but both Stoner’s fork and the cabin, are incon-trovertably proved to have been known'by the generality of.those, most conversant in that section of the country, by'theirrespective names,.of Stoner’s fork of Licking, and 'Martin’s cabin, as well when the certificate was granted to Searcy, as when-the •settlement entry was made, with the-surveyor.
Entry, to lie on Stoner’s fork of Lick-/ ing, at Martin’s cabin, should be surveyed in square, with lines to cardinal.points, including Martin’s cabin in centre.
Entry, to lie on south fork of Licking creek, below Stoner’s settlement, adjoining R. Searcy’s land above, and running up to the mouth of Cooper’s run, for quantity, to include his improvement, how to be surveyed.
But, admitting the validity of Searcy’s location, it was contended in argument, that' in directing the mode of surveying the entries, which depend upon Searcy, the court below erred, and for that cause, •the decree should |je reversed.
Witlrrespect to the location of Searcy, there is no difficulty in directing the survey. It should be constructed, as was directed by the court below, in a square, with lines to the cardinal points, including Martin’s cabin in the-centre.
When thus surveyed, the southern limit of Searcy must form the northern limit of M'Millan’s settlement entry, and the mouth of Cooper’s run, its extreme southern extent. Between those two extremes, and extending to each, the settlement entry of M5-Millian should be surveyed, with lines at right angles, and to the cardinal points, so that a line passing through the improvement at E, on the connected plat, northandsouth,willbisectthesurvey. Asurvey so made, will not only adjoin Reuben Searcy’s land -above, but will lie on the south fork of Stoner, extending up to the mouth of Cooper’s, run and include McMillan’s improvement. The south side of Sear-■cy’s land will not be adjoined the whole extent of his line, as would be necessary, if there were no call in the entry of M*Millan,' to control the import of the call, to adjoin the land of Searcy.. The necessity of so adjoining the line of Searcy, would, however, in that case, not result from any express call in the entry, to adjoin the full extent of Searcy’s line, but from what would be the supposed intention of •the maker of the entry; and when, as in the entry of *336 M'Millan, there are other express calls, which cannot be complied with, and make the entry adjoin the whole extent-of the line, it cannot be fairly inferred, that the maker of the entry so intended to adjoin the line.
In such a case, therefore, it would be more consistent with the probable intention of the locator, to make the general call to adjoin Searcy, so far yield to the other express calls, as to comply with each, and ■shape the survey in such a form, as will comport with ■the general principle of squaring the survey, and 'including the improvement in the centre.
But there is proved to have existed, at the date of M‘Millan’s entry, another improvement of M‘Millan’s •on Fiat run; and it was contended in argument, that the improvement so proved to have existed, equally well fits the calls of M‘Millan; so that in consequence of the uncertainty', as to the improvement, which was intended by the maker of the entry, it was insisted that the entry cannot be sustained.
That the improvement on Flat run, is sufficiently S-oved to have existed at the date of the entry of ‘Millan, will not be controverted-, and if it equally fitted the calls of the entry, the consequence might, .perhaps, be fata! to the entry. But we deny that the ^improvement on Flat run, does equally well fit the calls of the entry. Were there no other call but that of the improvement, contained in the entry, there might exist great difficulty in saying which of the two improvements were intended; but there are other calls in the entry, which must be complied with, and which could not, upon any rational rule of construction, be complied with in constructing a survey, so as to include the improvement upon Flat run. Hence, we infer that the improvement on Flat run was not intended by the maker of the entry, and that it should be surveyed, as we have already described to include the other improvement.
The pre-emption of M‘Miilan should be surveyed in a square, with lines at right angles, and adjoining his settlement on the east. A survey so made, wifi, on its northern limit, adjoin Searcy’s settlement in part, and will adjoin JVFMillan’s settlement on the *337 na'st, and extend south thereof, and include a cabin M‘Miilati’s improvement on Flat run.
Entr to ]ié on north side of south fork Pf Licking, beginning at s. M‘Milian’1 tendin^aion" same, and°nS: north for quantity,how yesuney
Trabue’s entry should be surveyed on the north and adjoining M‘Milian’s pre-emption, and on the east and adjoining Searcy’s settlement, with lines at riaht angles, so as to form a square. ’
The entry of Trabue contains no express call for the pre-emption of M‘Millan, but it calls to begin at the north line of MbMillan, and to make him adjoin the north line of M’Millan’s settlement, would produce the absurd consequence of making the entry of Trabue conflict with the entry of Searcy, when the entry of M‘Mil!an, upon which Trabue depends, calls for and depends Upon Searcy’s entry.-
For so much of the land in contest, as will be common to the survey of Trabué, as made, and a survey as herein directed to be made, the.heirs of Trabue ■have established a sufficient right to overreach any claim of the defendants in the court below, decreed exclusively from an older adverse grant; and, consequently, that court ought to have decreed a surrender of the legal title, to the same, unless the defendants have succeded, in establishing a superior equity, through some other adverse entry.
For the purpose of proving a superior equity, the defendants set up and rely upon various entries.
Some of them claim under the following pre-emption entry.
13th January, 178$, Keuben Searcy enters one thousand aeres of land, upon a pre-emption warrant, No. &c., adjoining the said Searcy’s settlement, oh the west end, north west side, and north end.
There can be no doubt as to the goodness of this entry. It depends upon the settlement entry of Searcy, which we have already seen, fe a good oneq and although junior in date to the entry of Trabue, it is entitled to priority, in consequence of its preemptive dignity, and so far as it has been correctly surveyed, must protect the defendants against thy claim of the complainants. - ’
*338 When the settlement entry of Searcy is surveyed-, as we have directed it, the pre-emption entry should surveyed upon its west and north sides, and- binding on both sides, the whole length of each line, and •extending west from the south west corner of the -.settlement, • and north from the north east corner ‘thereof, so-far, that a line extended north from (he .-•west line,1 and west from the north line, will include -the quantity.
Part of the defendants also set up and rely upon the pre emption entry of-M‘Mil'lau. That entry, we have also seen to be a valid one; and -of course, to so much of the land in contest, as may be common to a survey of that entry, when made as we have directed it to be made, and the survey which has been made, the complainants can have no right to relief.
Part of the defendants also set u,p and rely upon •the following entry.
May, 29th, 1780, George Riddle enters a pre-emption warrant of one thousand acres,'on the forks of ■Licking creek, about three miles above Riddle’s station, adjoining his settlement,on the east side, to begin two hundred yards above the mouth of a small creek, that runs in on the south side of the north /ork, and ■to run down the creek to the fork, and up the south fork, and back for quantity.
This entry is, also, junior in date to the entry of Trabuo, under which the complainant’s claim; but it •is relied upon by the defendants, to be superior, in -consequence of its pre-emptive dignity. But before . we attach to this entry, any pre-emptive merit, its ■validity must be established, and this we apprehend from the evidence in the cause, has not been done. Thére is enough in the cause, to satisfy our minds, that the locator intended to appropriate land in the forks of Licking, above the junction of the streams now called Hinkston and Stoner; but before we can give figure to the entry, and fix upon Its actual posij • tion, it is important to ascertain its beginning. For this purpose we have looked into, and searched the -record, but our search has been altogether vain. We have been unable to find in the deposition of any one ■witness, a solitary expression, conducing to prove the *339 existence of a small creek, running into-the south side of the north fork, two hundred yards above which, the entry calls to begin.
Expressions, ‘".mall branch and small creek,’ do not import precisely same-idea.
in his report, it is true, the surveyor has delineated upon the -connected-'-plat, what he denominates a small branch, running* into the north fork, on the south, and above the junction of the forks; but in common parlance, the expression small ■ branch and■ small creek, are not understood to import precisely the same thing, and in the absence of all-testimony, as to the branch, to presume from the solitary fact of its. reported existence, about forty years after the entry was made, .that it is the creek alluded to in the entry, we must not only confound all distinction between branches, however small, and creeks, but we must also assume what may not, according to the course of nature, be -the fact, that this small branch, had an., existence prior to the date, of-the entry, in 1780*
The entry of George Riddle cannot, therefore,., afford any protection to the defendants against the claim of the complainants.
Part of the defendants also, set up, pnd-:rely upon other entries, but as there appears to have-been no effort in the preparation of the cause, to-support-them, it is not necessary to bestow any remarks upon-them.
On the part of the defendants, in the- court below, exceptions to the regularity of the proceedings there have been taken in this courtj-and as the cause must be remanded to that court, it is proper to remark, .that there should have been no decree against- Thomas Garrard. He appears not to have been made a defendant, and was for the first time introduced into the cause, by pronouncing-a decree against him; But, as respects the other persons,, against whom the decree was made, no solid objection to the court proceeding to hear and decide the cause, is perceived. .
Various other persons were made defendants by -the complainants, and as to whom, the cause was not in a state of preparation for trial; but there is nothing in the cause to shew suchanunity of interest between those persons and the defendants, against whom the *340 decree was entered, as to forbid the hearing of the cause, as to any, before the cause was prepared for trial as to all.
tuition for a re-hearing.
The decree must be reversed, the cause remanded to the court below, and a decree there entered, in conformity to the principles of this opinion.
Each party must pay his own costs in this court.
Talbol and Triplet, for Trabues Heir’s; Crittenden and Hoggin, for Smeltzer, &c.
J. J. Crittenden, as counsel for Smeltzer, fyc. presented the following petition for are-hearing:
The counsel for Ruddle, Ship, &c. respectfully requests of the court, a re-consideration and re-hearing of this case, And without troubling the court with a discussion, they will suhmit only such remarks and suggestions, as may be necessary to call the attention of the court to those points upon which they rely; and which, possibly, may have heretofore escaped the scrutiny and consideration of the judges.
Trabue’s heirs are cobnpláinants, claiming under an entry in the name of their ancestor, for 600 acres, and seeking to recover the land in contest, from those in the adverse possession thereof, under other claims. The entry of the complainants calls for, and depends hpon the claim of Samuel McMillan (or McMullin) and McMillin’s, calls for'and depends upon the claim of Reuben Searcy. The complainants in their own hill; expressly allege, that the entry of Searcy “is not valid in law,” and that the entry of McMillan ^“destitute of the precision and notoriety required by law.” They have thus destroyed the foundation of their own claim. Can they be permitted to introduce proof that those claims are valid, and to recover, on the strength oh'that proof, against their own allegations? If they cannot, the court has erred in sustaining their entry and decreeing in their favour.
The court has-directed Searcy’s settlement to be surveyed in a square, with lines to the cardinal points, including Martin’s cabin in the centre; and McMillan to adjoin him, binding on Searcy’s southern limit, and extending southwardly to Cooper’s run, &c. Placing *341 the improvement in the centre-, as neñrly as- practicable, and then McMillan’s pre-erpption to lie on the east thereof. These claims, when so surveyed,, will present the following figure:
Petition for-a. re-hearing.

The court has then directed the complainant’s claim .to be laid down in a square, in the angle at A. adjoining Searcy’s settlement and McMillan’s pre-emption. But why not lay it down in the angle .B? Either angle equally well fits the entry of the complainants. If an entry by its calls fits two places equally well, it is void for uncertainty. Or at least it must assume that position most advantageous to the opposing claimants. It is evident, Trabue cannot be placed on the centre of McMillan’s northern limit, for Searcy’s settlement occupies that ground; and it is absurd to suppose that he, (Trabue) intended to cover an entry, adopted as the basis and foundation of his own. This is the reasoning of the court. He must then b.e placed either on the one side or the other. Both suit equally well the calls of his entry. Can he have his choice? Certainly not. On what reason is it then, that the court has located Trabue in the angle A, in preference to the angle B.? Perhaps the court meant thereby, that he ought to keep clear of Searcy’s pre-emption, which they had fixed ifi the angle, at B. But it must be remembered that *342 Searcy’s pre-emption entry was not-made till near-^iree years after Trabue’s; a'nd when Searcy did. enter his pre-emption, he had a pre-emptive, or at least, an equal right to choose either angle, and ap-pr0priate it by his entry; and his. subsequent location-cannot be permitted tx* determine the locality of Trabue’s, that had been floating for about two years,., and could'derive no certainty or precision from the after made entry of Searcy.
Petition for a re-bearing,
Again, the complainants claim and seek to recover-as the heirs of James Trabue. Their heirship is not admitted. On the contrary, they are called upon in the answer of the Smellzers, page 21,.“for full proof of the-goodness of their title,.both in law-and equity.” And: there is no proof in the record that they are the heirs of Trabue.
But if, after all,, the complainants are entitled to recover, the-cause- ought not to be closed, but to be-thrown open for new proceedings, for- the-following reasons:
The persons-made-defendants in the original bill are Laban Shipp, Isaac Ruddle, (Hoy’s heirs without naming them) James Coons, John Mulherrin, Daniel Garrard, Cornelius Ruddle, Peter Smith, —— Smelt-zer, Barbara Smeltzer, and Samuel McMillan; against M'Millan and Hoy’s heirs. No- proceedings appear to-have been had. An amended bill bpings in John Smeltzer, sen’r. John Smeltzer, jr. and Warren-Bates, and alleges that they have got in, and hold possession, and also James Coons, with them, under Isaac Rüddle ;■ but does not charge them with having title.
The decree below, was rendered against Laban Shipp, John Smeltzer, without saying either senior or junior, and it can not be told which,. James Coons,. Warren Bates, and John Smeltzer again.
Now, it will be seen, that the claim as directed to-be laid down by the appellate court, will-be taken off in part, from these defendants, and be placed on others, and no absolute decree ought to be rendered against them at once, because, as to some of them, it does not appear that they have title, and others evidently have not. The title of part'of the land is charged to be- *343 in Isaac Ruddle, and on bis death, there is an''order of revivor; but no revival is had against his heirs, •Coons is charged with getting into possession of their lands; but not with having title, tie admits his .possession, but not his title; and yeta decree has against him for land, the title to which appears to be -fin the heirs of -Isaac Ruddle, who are no parties to the suit.
—--- Petition for a
John Smeltzer, senior and junior, both answer and admit title as to part; but expressly deny any title, •except by bond, as to the residue; and yeta decree is directed at once against them, without bringing the holder of the.legal title before the court.
•Peter Smith, Barbara Smeltzer, and '-— 'Smelt-zer, must now be affected by the decree as directed; and'their.lands are now covered.
They expressly deny having any thing more-than an equitable title; and of course, the legal title holders, must be brought before the court. For it-is a settled and unquestionable doctrine in chancery,-that no decree for lands ought to be rendered unless the holders of the legal title are parties.
■ Jsham Talbot, as counsel for Trabue’s heirs, filed following response to the petition for re-hearing.
The counsel for Trabue’s heirs, influenced by the most anxious desire to bring to a termination, a case which has been protracted by repeated decisions, for spme four or five years; and at length, as the undersigned had forcibly known, finally determined by a decision, ■solemnly pronounced, after mature deliberation, in favor of his client, respectfully submits, a few remarks fin reference to-the petition for a re-hearing, filed by the counsel for his’ opponents.
These remarks will be confined to the two points, made in the petition,- which allege a defect of the evidence, on the part of the complainant, to manifest ■that they are the heirs at {aw, of their father, James Trabue, deceased, under whorn they derive their ■right to sue in the present case; -and-¿hat which imputes to the complainants the destruction of their own claim, on the pretence, that they have in their bid!, alleged that the settlement and pre-emption *344 which the entry of their ancestor 'calls to a<ijoin, are invalid foi^ want of certainty in their locations.
re-hearing/&
In ad that'Concerns the real and true merits of the. present contest, the validity and relative merits of the opposing dairies, the counsel has not the slightest apprehension that your honors will feel the slightest inclination to disturb the very able and correct opinion Of your predecessors, by whom it was matured and pronounced.
And in answer to the suggestions in the petition, oil the first point, it is worthy of remark, and entitled to the most serious consideration, that this objection is nowsuggested and urged, for the first time, on the part of the defendants. Neither in any stage of the progress of the cause in the circuit court; the final' trial -in that court, in pleading or argument; in the' assignment of errors in this court; in the brief presented by them, in which, by the rqlgs of the court, all the points intended to be relied on in the argument of the cause, or in the argument, successively urged at the hearings before this court, by the able and enlightened counsel, first general. Hardin and then by Mr.'Crittenden, has this point ever been urged or insinuated, as'one that ought to affect the decision in the cause.
That it ought not, at this period, and on the present application, which is for a re-hearing of the cause, an alleged érror in the opinion of this court, the undersigned- feels the most entire conviction. The objection is urged at this time, with no pretence of even a doubt or insinuation, that the complainants are not the children, and truly, the heirs at law of their father, James Trabue. It is a fact which they might, at the proper time, and in legal form, have fairly contended, by a simple denial, or the expression of even a doubt of the heirship of the complain-, ants, and a requisition of proof on their part, that they were really entitled to the character in which they sued-. Had such denial, or requisition have been made and urged by the defendant, in their answers, as in all justice an.d candor it should have been, the complainants would have been put upon *345 their ¡guard, and on their inability .or failure to make the proof* they would have been dismissed, as impostors, from the court, and they,, as well as the defendants, spared the enormous cSpense of preparing n suit of such complication, on its merits*
Response to petij£on.
Is it, therefore, compatible with the wisdom of the chancellor, or the justice of the court, or the well understood principles of chancery proceedings, that complainants, suing in the characters of heirs at law, of a deceased father, their claim to which is of general notoriety in the county in Which they reside and sue, fairly setting forth their claim to property, the title of which is prayed to he decreed th'em,are met, on the part of the defendants, by no denial or doubt of their right to the character thus assumed. But with a denial of the validity of their title to the land4 the subject of the suit, and with an assertion of the better and paramount ,title of the defendant, held and decreed to them by adverse rights, that a full, fair and open investigation of these hostile rights, on their merits; that the complainants should, for the lirst time, on petition for a re-henring, be met with the objection, that they have no title to the character in which they have asserted their superior right to the matter in contest? And does not every principle of justice revolt at such proceedings? It is the provision of all pleadings in equity as well as at law, to bring all the matters in contention toan issue, either at law or fact. ' On matters alleged and not denied, no issue can be joined; nor should evidence be required to support the affirmation. But when the matter thus affirmed, as in the presént ense the heirship of the complainants is mere matterof inducement, preliminary to the setting out the title to the thing in contest, nor the ordinary subject of litigation between the parties, shall the defendants be permitted, by an artful silence, acquiescing in the statement, by such silence, and thijs lulling his adversary, into a security, which your honors are called on to pronounce a fatal one, be permitted, tacitly, to reserve to himself the right, after years of silence and acquiescence, to urge, for the first time,long after a final decision-of .the merits of the cause, by the appellate tribunal, to urge the wan! *346 of evidence of a point preliminary to the merits of the case.
Response to position.
That the complainant is not entitled to sue in (he character which he assumes, is matter in abatement, and should be urged in equity as well as at law; if not with technical rigour, and according tothe most liberal application of the principle, it should he expressly stated and.relied on, either by way of plea, or in the answer of the . defendant, or can he controvert the ■ right to prosecute the suit in the character assumed. And upon principles-of public policy, general convenience and individual justice, when the.defendant to -each bill,-instead of controverting the Tight to sue; passing over such allegation in perfect- silence, and choosing' to stake the issue of the contest on the merits of adverse claims, fairly put in opposition, ought, by such acquiescence, lo be deemed -to have waived this and all other preliminary questions, which affect ■ not the determination of the rights respectively, put ■ in opposition by the contending parties.
If an actioirat common law, affecting a right in (he ’character of executor, or heir at law, to tiie thing or matter which is the subject of the suit, (here are appropriate pleas for putting in issue (he right of the •piainfiffto sue in the character he has assumed. If the defendant, bypassing bysuchplea,and relyingon some other matter in bar of the plaintiff’s right, forever waives all future right to question the plaintiff’s right thus to sue, in the character he assumes. Is there . any substantial reason for the application of a differ- - ent rule in equity, when the same person, in the same character of executor or heir at law, files his bill in equity, affecting the same or similar rights in those ■characters in a'court of equity? No difference in principle seems to exist between the courts of law and equity. And if any difference can be found, it cannot be in favor óf the court of law, in which rules, purely technical and artificial, are often found subversive of justice, and the right of the case. How much more strongly will the chancellor show duty, and delight it is to attain the ends of justice, regardless of forms, and emancipated from technical restraints, lean against all attempts to subvert the justice of the case, by rejecting their application to suits in equity.
Response to petition,
But these arguments, applicable to common case?, are entitled to the highest consideration, and ought to have conclusive force, in a case circumstanced as the present is. in this case, not only have the parlies who now urge this- vein of proof, made no denial, expressed no doubts, demanded no proof of the heir*ship of the complainants* in their answer, or on any, occasion, in any stage of the progress of the cause in the circuit court;, but join issue on the-merits of the-claim, when-in the assignment of errors; in the briefs of counsel; in the arguments of counsel, where the subject is not touched or alluded to, in the able and luminous opinion of the court. Is it competent for the party, who has, for so long a time, on so many occasions, omitted to urge this objection, on a petition for a re-hearing, assigning errorsj in the opinion of the court, on points never made in argument, or.; touched by the court in their opinion?
Is it not as absurd as urgent, to impeach the opinion. of the court as erroneous; and urgent on points not touched in the opinion, and in which the adjudication of the court has never been asked, either.by the assignment of error, the brief, or the arguments-of counsel? And if the party, had once a right in this court, to. insisten this objection, has he not, by waiving it on so - many fit occasions, (if such right existed) waived his right forever? Nor will your honors permit the justice of the court to be affected, the rights of the complainants-to be forever lost, or sacrifived for an omission in the preparation of this cause, which the under-, signed- can never be induced for a momept to believe,. in the existing state of the pleadings-he was bound, in duty to himself,.to make? Forbid.it justice! forbid-, it heaven!'
No decision, in the opinion of the undersigned, inadvertently or hastily given, without a view of the whole ground, the reasons and the consequences of-such opinion, can make it reason, law-or justice, all of which are outraged by such-decision.
The next objection taken to this opinion in the petition of the defendants, that the complainants in their bill have averred the invalidity of the entries of •Searcy and of M‘Millan,.on the existence of which, *348 the entry of the complainant depends, in part, for its-SUPP0!% is entitled to hut very little consideration in mind of an enlightened and upright judge; and js founded on the preferment of the merest legal quibble.
Response to. petition.
Replication-, to response,
The complainants having set forth their entry .in its word's and letter, even in the most precise and appropriate language, that it possesses all the qualities of a valid entry. And although they subsequently by mere inadvertence, slate that they are advised by counsel, that the conflicting claims are founded oii entries which are invalid, and which have been surveyed illegally, and variant from their locations, the latter part of which averment is strictly proper and appropriate. Will the mind of any liberal and enlightened judge, upon the ground of a mere inadvertence of language in the drafting of a bill, not averring the invalidity of the entry as matter of law ói- fact, but .merely as the advice or opinion of his counsel, operate the destruction of his claim? Although he has averred in emphatic terms, the validity and superiority of his own title, over that of the defendants, and demanded in appropriate terms, a conveyance of the defendant’s title, alleged to be invalid on account of the error in surveying the claims under which they derived their title;*1 Never; Wherefore, &c. &c.
Benjamin Mills, as counsel for Smelizer. filed the follow*■ ing replicatiori to the petition of Mr. Talbot.
Thd Counsel for ihe petitioners, in this case, feels-. gratified in having, at last the opportunity of bring-inga revision of the cause before a court of judges, competent to re-heat and decide it. It -was at first, heard and decided by two judges only, when one was about to retire from the bench, and both were hastening tp conclude the causes exclusively confided ta them,. The petition for a re-hearing came in due time, wilder the most solemn conviction, that the judges had inadvertently overlooked some important defects in the proof of the complainants below. But still the petition came t.oo late. One of the judges had retired and the third judge deemed himself incompetent to, sit in the cause, having been of counsel for one of the parties, while the cause was in the court of original jurisdiction*
Repiicatiojr to response:.
Of success now, the counsel for the peliiioners could not entertain a doubt, if the cause remained before the judges who originally decided it. The readiness and magnanimity with which those ornaments of the bench would approach, and correct, their inadvertences, mistakes and unintentional errors, would be a safe guarantee of success, on the petition for a re-hearing. And all this memorialist has to fear, is the high respect that your honors may justly pay to the decree of your predecessors, and the delicacy which must be felt in correcting even their errors. But notwithstanding this opposing difficulty, it is. with a degree of confidence, that the application for a speedy re-hearing is pressed, and seriously urged.
It is observed, as an omen of success, that the counsel for the adverse party, in response to the peté tion, evinces some alarm at some of the exceptions taken to the decree. He seems to feel the weight of the allegation, that the complainants claim as heirs, and yet wholly fail to prove that they are the heirs of the man whose entry and patent they set up*
He analogizes the case to a party'suing in.a rVrong character, when he has a right to sue in some character; in which case he alleges, that the variance must be pleaded in abatement. There is no resemblance. It is not a character here in which the parties have attempted to sue, when they support title in another character. But it is ah. essential allegation-of a fact necessary to give them title.- Without it, they have no claim to the entry which they set up, and for any thing that appears, the court is decreeing the land to strangers, and not privies to the estate of James Trabue*
It is urged that the objection comes too late; that the cause was heard in the court below, without saying any thing about the absence of all proof of heir-ship, and that the briefs, assignment of errors and previous argument here, are and were all silent on this point. It docs not appear that there was silence below, on this point, and it is wholly immaterial if there was. The complainants in that court, set out an entry, survey and patent of James Trabue; allege his death; that (hey are his heirs at law,and as such, his title descended to them. They are put upon the *350 proof of their case,, generally, and this is enough, The complainants failed to make a syllable of proof in support of these essential allegations, and still that court decreed in.their favor: The general error is assigned here, that the decree is erroneous, and that is enough, if the complainants have no title. If it be conceded that the total absence of this proof was overlooked by the counsel who argued, and the judges-who decided the cause; this moredearly proves that-the error ought tobe corrected, while the cause is in •the power of the court.
Replication < o responso.
One word more as to the answers below,.not denying totidem verbis^ that the complainants are the heirs of James Trabue.. This omission would not authorize the court to take the bill as confessed,, on this point. For the doctrine is well settled in this court, by numerous decisions, that the omission of the defendant, who has answered, to deny any allegation, will not warrant the taking that allegation as true, unless the truth or falsehood of the faets charged, are such as must necessarily be within the- knowledge of the defendant, who has made the omission.. The heir-ship of these complainants here, is a fact, to which, from any thing which appears, the defendants were entire strangers. If, therefore, they were silent about it, the complainants must prove it.
It is urged in the response, that the rule ought to be the same in chancery as at law’, on this point, and, the proceedings in a court of law are referred to, to Sustain this decree. The reference is unfortunate. Suppose these complainants had possessed the elder grant and had brought their ejectment, what would-they have been compelled-to prove on the trial of the general issue? Certainly that James Trabue, the patentee, was dead; that they and each of them were recognized by him, and known to his friends and relatives as his children, and. that one of his daughters had married a certain William'B. Scott, whereby her name was changed; and-if they failed in this, they would be subject, to a non-suit, or a verdict against them. With less than this, they cannot get through in a court of equity, and not one syllable on this point,, is proved.
Replication t0 leS|)0nse'
There have been many similar cases in this court, supposed to be cases of great hardship, when long and important chancery suits for land, have been pared, in favor of persons claiming as heirs, and who perhaps, relying on the notoriety of the fact, dehors the record, have failed to prove that they were heirs, and for the first time, this defect has been taken advantage of in this court. The court has been appealed to, on account of the supposed hardship, to open such causes, and remand them for further proceedings. This has been invariably refused, as against both •principle and the settled law of the court, and it has ■become customary to reverse such decrees and dismiss the bill by silent entry on record, without any opinion. The same has happened to complainants who set up title to land by execution, and failing to •produce the judgment. Their cases have been decided on the ground that they had wholly failed to show title. The case is-analogous to a party complainant, claiming title by grant ordevi.se, and failing to produce his deed or the will. Like the man who •claims as heir and fails to prove himself so, he loses his case, as most others do, because they want sufficient proof of right. The respondent need not complain of such violence to the justice.and equity of (lie cause, by such a procedure. Is it just or equitable in the court, to decree the land to him who has no title? 1
The respondent seems to make light of the argument, that the complainants have charged expressly, in their bill, that the locations of Searcy and M’Mil-lan are void, and yet are allowed to-rccover, by proving those locations to be good and valid, being part of their own entry. I do conceive that the risk that the allegation and proof must correspond, is too well settled, both in chancery and at law., to need the support of authority. If a party plaintiff or complain-imt, proves facts merely different from what th*>y are alleged, he must fail, on account of the variance. Ceytainly the reason is more strong, when he flatly' contradicts and disproves his allegations. There is a-famous case in Wheaton’s Reports, which I cannot moxv refer to, where, the supreme court of the nation *352 refused relief in a land case, in this country, becaus'e complainant failed to allege that his own entry was a good one, or his adversary’s a bad one. The book is not at hand, but the case can be found, if thought necessary on this point.
Replication to response,
I trust that it will be distinctly understood that the remaining grounds taken in the petition, arc not abandoned. They are relied on as valid against (he complainant’s right. It was not observed by the court, that in the mode the claims are to be surveyed, two north sides are presented of M’Millan’s claim,, one on each side of Searcy, and that laying the complainants on either side, will equally well comply with their calls, and therefore, their claim is valid.
It will also be seen that itis wholly uncertain what John Smeltzer the decree is against.
It is also evident that the position of the complainant’s claim is changed, by the decree of the court, from that which it occupied, as directed by the decree ■oí the, court below. By the latter decree, one set of defendants lost and others escaped. By the decree of this court, the losers below succeed, and the claim is laid on those who were successful in the first instance. The class, who now lose, have, by the pleadings and proof, no legal estate, and but' bonds only, and those who hold the legal title are not before the court. It is an evident and clear principle, that The chancellor will noi sustain a bill, on an adverse entry, against the holder of an equity only, and grant possession alone, or decree those to convey, who have no legal title. All such bills go for relief against the legal estate, and (he chancellor will not try the cause till all claimants are before him, because the holder of the legal estate would not be bound by such decree, and suits would, thereby, be multiplied. On this ground, if all others fail, the cause ought to be sent back for new parties and new' proceedings, in which event, it would be ultimately unsuccessful, by a defence never yet made. But it is hoped that the court, on finding that the complainants have no title, will not find it necessary to protract the cause further, but will dismiss the bill on the ground herein first ■discussed.
*353 'Opón the whole case, therefore, a re-hearing is argently but respectfully again solicited, vide Oldham vs. Rowan, III. Bibb, 584.
Note.' The opinion in this case, was suspended by the petition for re-hcaring, until 20th Januan, ’30, when the court decreed that the foregoing opinion stand unaltered and affirmed. Judge Mills did not sit in this case; and after resignation of his office of judge, appeared as counsel for Smeltzer, &c.